IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | SEALED |
| | § | |
| v. | § | No. 6:17CR *4o* |
| | § | JUDGE *RC/KNM* |
| THEODORE ROBERT WRIGHT III (01) | § | U.S. DISTRICT COURT |
| SHANE GORDON (02) | § | EASTERN DISTRICT OF TEXAS |
| RAYMOND FOSDICK (03) | § | MAY 1 7 2017 |
| EDWARD DELIMA (04) | § | |

<u>**INDICTMENT**</u>　　　　BY DEPUTY_____

THE UNITED STATES GRAND JURY CHARGES:

<u>**General Allegations**</u>

At all times relevant to this Indictment:

1.    **Theodore Robert Wright III (T.R. Wright)** resided in or around Kemah, Texas, and Las Vegas, Nevada.

2.    **Shane Gordon** resided in or around League City, Texas.

3.    **Raymond Fosdick** resided in or around Rock Hill, South Carolina, and Houston, Texas.

4.    **Edward Delima** resided in or around Honolulu, Hawaii.

5.    Theodore R. Wright Enterprises, Inc. was a Montana corporation. Incorporated on June 25, 2014, the company is currently active.  **T.R. Wright** is the President and Director.  **Shane Gordon** is the Secretary.

6.      Government Auctions Online, LLC was a Nevada limited liability corporation.  Formed on February 18, 2011, the company is currently inactive.  **T.R. Wright** was the Manager.

7.      Sly International Holdings was a Texas sole proprietorship.  Formed on February 12, 2010, the company is currently active.  **T.R. Wright** is the Owner.

8.      Carissus, LLC was a Texas limited liability corporation.  Formed on February 3, 2013, the company is currently active.  **Shane Gordon** is the Manager and Director.  Carissus, LLC was also formed as a separate Montana limited liability corporation on November 5, 2013.  **T.R. Wright** is the Manager of the Montana entity, which is currently active.

9.      Excellent Aviation, LLC was a Texas limited liability corporation.  Formed on August 19, 2013, the company is currently inactive.  **Shane Gordon** was the Manager and Director.

10.      Plaisir en Vol, Inc. was a Montana corporation.  Incorporated on March 18, 2014, the company is currently inactive.  **Shane Gordon** is the Director and Secretary.

11.      Hartmann Sanford Group, Inc. was a Texas corporation.  Formed on November 12, 2014, the company is currently inactive.  The company was associated with **T.R. Wright** and **Shane Gordon**.

12.      **T.R. Wright** and his co-conspirators utilized numerous bank accounts related to the entities described above, as well as bank accounts related to other entities

and individuals, at Wells Fargo Bank, JP Morgan Chase Bank, Capital One Bank, and

U.S. Bank, and other financial institutions.

## COUNT 1

Violation:  18 U.S.C. § 1349
(Conspiracy to Commit Wire
Fraud)

1.     The General Allegations section of this indictment is realleged and

incorporated by reference as though fully set forth herein.

2.     From in or about March 2012, and continuing through in or about March

2017, the exact dates being unknown to the grand jury, in the Eastern District of Texas,

and elsewhere, the defendants, **T.R. Wright**, **Shane Gordon**, **Raymond Fosdick**, and

**Edward Delima**, along with others both known and unknown to the grand jury, did

knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C.

§ 1343, wire fraud, that is to transmit and cause to be transmitted by means of wire

communication in interstate and foreign commerce any writings, signs, signals, pictures,

and sounds for the purpose of executing a scheme and artifice to defraud and for

obtaining money and property by means of false and fraudulent pretenses,

representations, and promises.

## Purpose of the Conspiracy

3.     It was the general purpose of the conspiracy for the defendants and their co-

conspirators to defraud insurance companies and unlawfully obtain money from such

insurance companies by means of false and fraudulent pretenses, representations, and

promises.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.     To achieve the goals of the conspiracy, the defendants and their co-conspirators acquired various vehicles, aircraft, and vessels.

5.     The defendants and their co-conspirators obtained insurance coverage for the acquired vehicles, aircraft, and vessels in amounts exceeding the purchase prices of those vehicles, aircraft, and vessels.

6.     The defendants and their co-conspirators devised and carried out schemes to destroy the vehicles, aircraft, and vessels.

7.     The defendants and their co-conspirators defrauded insurance companies and obtained money from insurance companies by means of false and fraudulent pretenses, representations, and promises.

8.     The defendants and their co-conspirators obtained control of the funds paid by the insurance companies and used the monies for their personal benefit, as well as that of others.

## Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

**1966 Beechcraft Baron N265Q**

9.     On or about March 2, 2012, Government Auctions Online, LLC purchased a 1966 Beechcraft Baron aircraft, United States Aircraft Registration Number N265Q, for $46,000.00.  **T.R. Wright** paid for the aircraft by wire transfer from a Wells Fargo account held in the name of Sly International Holdings.

10.     On or about April 3, 2012, **T.R. Wright** insured the aircraft for $85,000.00. The insurance premium payments were made from a Wells Fargo account held in the name of Sly International Holdings and a Wells Fargo account held in the name of Government Auctions Online, LLC.

11.     In April 2012, August 2012, and September 2012, **T.R. Wright** attended water-landing training in Lake Martin/Alexander City, Alabama.

12.     On or about September 20, 2012, **T.R. Wright**, as the pilot, and **Raymond Fosdick**, as a passenger, departed from Baytown Airport in Baytown, Texas, in the 1966 Beechcraft Baron en route to Sarasota/Bradenton International Airport in Bradenton, Florida.

13.     On or about September 20, 2012, **T.R. Wright** and **Raymond Fosdick** made an emergency landing in the Gulf of Mexico after an alleged mechanical failure caused smoke and flames in the cockpit.  The aircraft subsequently sank in deep water and was not recovered.

14.     On or about September 21, 2012, **T.R. Wright** filed an insurance claim for the loss of the 1966 Beechcraft Baron in which made false and fraudulent representations. Among other things, **T.R. Wright** falsely and fraudulently represented that the

emergency landing in the Gulf of Mexico was caused by mechanical failure, rather than the result of an intentional act.  **T.R. Wright** communicated with the insurance company by email and cell phone.

15.    On or about October 3, 2012, **T. R. Wright** caused the insurance company to issue a check in the amount of $84,000.00 made payable to Government Auctions Online, LLC.

16.    On or about October 10, 2012, the $84,000.00 check was deposited into a Wells Fargo account held in the name of Government Auctions Online, LLC.

**Personal Injury Lawsuit**

17.    On or about April 9, 2013, **T.R. Wright** sent an email to **Raymond Fosdick**.  The email referenced a debt that **T.R. Wright** owed, but stated, "…our tylka payday is going to pay that off…"  **T.R. Wright** indicated that he was under a deadline to repay the debt and instructed **Raymond Fosdick** to "push your lawyer!"

18.    On or about September 17, 2013, Tylka Law Center, on behalf of **Raymond Fosdick**, filed a personal injury lawsuit against **T.R. Wright** and Government Auctions Online, LLC in *Raymond Fosdick v. Theodore Wright, et al.*, Cause No. 13-CV-1201 in the 212th District Court, Galveston County, Texas.  The civil complaint sought more than $1,000,000.00 for injuries and damages sustained in the September 20, 2012, aircraft crash in the Gulf of Mexico involving the 1966 Beechcraft Baron.

19.    **T.R. Wright** communicated with the insurance company about the lawsuit by email.

20.    On or about December 10, 2013, the lawsuit filed by **Raymond Fosdick** was settled for $100,000.00.  The insurance company's settlement check was made payable to **Raymond Fosdick** and Tylka Law Center, P.C.  Shortly thereafter, Tylka Law Center issued a check in the amount of $8,000.00 made payable to **Raymond Fosdick** and a check in the amount of $42,000.00 made payable to Carissus, LLC.

21.    On or about December 20, 2013, **Shane Gordon** deposited the $42,000.00 check into a Wells Fargo account held in the name of Carissus, LLC.

22.    On or about December 23, 2013, Carissus, LLC transferred $41,000.00 by wire transfer from the Wells Fargo account to a Wells Fargo account held in the name of **T.R. Wright**.

### 2008 Lamborghini Gallardo

23.    On or about November 7, 2013, Carissus, LLC purchased a 2008 Lamborghini Gallardo with a salvage title for $76,000.00.  The vehicle was purchased by wire transfer from a Wells Fargo account held in the name of **T.R. Wright**.

24.    On or about November 12, 2013, **T.R. Wright** insured the 2008 Lamborghini and a 2006 Range Rover Sport Wagon.  The insurance premium payments were made from three separate accounts held in the name of **T.R. Wright** - a Wells Fargo credit card account, a Wells Fargo bank account, and a Capital One credit card account.

25.    On or about March 9, 2014, **T.R. Wright** drove the 2008 Lamborghini Gallardo into a ditch full of water, causing the vehicle to flood.

26.    On or about March 10, 2014, **T.R. Wright** filed an insurance claim for the loss of the 2008 Lamborghini Gallardo in which he made false and fraudulent

representations.  Among other things, **T.R. Wright** falsely and fraudulently represented that the crash was an accident, rather than the result of an intentional act.  **T.R. Wright** communicated with the insurance company by email.

27.     On or about May 19, 2014, **Shane Gordon** communicated with the insurance company by email.

28.     On or about May 19, 2014, **T.R. Wright** and **Shane Gordon** caused the insurance company to issue a check in the amount of $169,554.83 made payable to **T.R. Wright** and Carissus, LLC.

29.     On or about May 20, 2014, **Shane Gordon** deposited the $169,554.83 check into a Wells Fargo account held in the name of Carissus, LLC.

**1971 Cessna 500 N18FM**

30.     On or about March 14, 2014, Excellent Aviation, LLC purchased a 1971 Cessna 500 aircraft, United States Aircraft Registration Number N18FM, for $190,000.00.

31.     On or about March 24, 2014, Plaisir en Vol, Inc. purchased the aircraft from Excellent Aviation, LLC.

32.     On or about March 28, 2014, Plaisir en Vol, Inc. insured the aircraft for $440,000.00.  The insurance premium payments were made from a Wells Fargo account held in the name of Carissus, LLC.

33.     On or about August 29, 2014 and August 30, 2014, **Raymond Fosdick** flew to Athens, Texas, to destroy the 1971 Cessna 500.

34.     On or about August 29, 2014 and August 30, 2014, while **Raymond Fosdick** was in Athens, Texas, **T.R. Wright** and **Raymond Fosdick** communicated through iMessage.  Abridged excerpts of their communications are as follows:

| | |
|---|---|
| **T.R. Wright**: | Just don't look suspicious there |
| **Raymond Fosdick**: | I can dump it and get avgas |
| **T.R. Wright**: | Or go dump it out and just fill with car gas |
| | Land somewhere else, dump it out and use the |
| | 24hr self serve? |
| **Raymond Fosdick**: | I know |
| | I'm at the airport |
| **T.R. Wright**: | I'm in.  Go for launch. |
| **Raymond Fosdick**: | Now |
| **T.R. Wright**: | Now |
| | Send confirmation when able please. |
| **Raymond Fosdick**: | Plane will not start |
| **T.R. Wright**: | Don't kill the battery.  Let it sit for a minute. |
| | It's probably flooded.  Try to start with throttle |
| | open and mixture pulled |
| **Raymond Fosdick**: | That's what I'm doing |
| **T.R. Wright**: | 20 minutes till 0500.  What's up |
| | Is the job done? |
| **Raymond Fosdick**: | Still hasn't started |

| | |
|---|---|
| | No setup but not done |
| | Old man just showed up |
| **T.R. Wright**: | [Expletive] |
| | Have your story straight and don't [expletive] |
| | around |
| | Obviously we don't know each other |
| | I don't [expletive] know dude.  I don't |
| | [expletive] know.  This is totally [expletive] up. |
| | I really hope nobody goes and looks in the |
| | plane |
| **Raymond Fosdick**: | What am I supposed to do |
| | I can't do anything w him here |

35.    On or about August 30, 2014, **Raymond Fosdick** left Athens, Texas, and returned to South Carolina.

36.    On or about September 12, 2014, **Raymond Fosdick** flew back to Texas, to destroy the 1971 Cessna 500.

37.    On or about September 12, 2014 and September 13, 2014, **T.R. Wright** and **Raymond Fosdick** communicated through iMessage.  Abridged excerpts of their communications are as follows:

| | |
|---|---|
| **T.R. Wright**: | Did you get some switcheroos?  I'm nervous |
| | about somehow having this thing spotted and |

|  |  |
|---|---|
|  | getting linked back to sink us. I would feel much better if we could disguise it slightly |
| **T.R. Wright**: | Car is at 18150 McKay Blvd, Humble, TX 77338 Sleep inn.  Black Altima key in cup holder.  Taxi there.  Then you can leave it at Conroe when finished |
| **T.R. Wright**: | Do not get made in that car or it will sink us.  I would really like if you can have some switcheroos |
| **Raymond Fosdick**: | It's done |

38.    On or about September 13, 2014, **Raymond Fosdick**, acting at the direction of **T.R. Wright**, set the 1971 Cessna 500 on fire, destroying the aircraft completely.

39.    From on or about September 15, 2014 to on or about September 17, 2014, **Shane Gordon** made multiple phone calls to the Athens Fire Marshal during which he informed the Fire Marshal that he would provide investigators with information related to the pilot and ownership/management of the 1971 Cessna 500.

40.    On or about September 16, 2014, **Shane Gordon** communicated with the Athens Fire Marshal by email, falsely and fraudulently representing that a co-conspirator was responsible for the ownership/management of the aircraft.

41.     On or about September 16, 2014, a co-conspirator communicated with the Athens Fire Marshal by email, falsely and fraudulently representing that he was responsible for the ownership/management of the aircraft.

42.     On or about September 17, 2014, the same co-conspirator communicated with the Athens Fire Marshal by email, falsely and fraudulently representing his ownership/management of the aircraft and the relationship of **T.R. Wright** with the aircraft.

43.     From on or about September 17, 2014 to on or about September 22, 2014, **T.R. Wright** made multiple phone calls to the Athens Fire Marshal during which he falsely and fraudulently represented certain information about the aircraft, including his relationship with the aircraft, the condition of the aircraft, and the ownership/management of the aircraft.  On at least one occasion, **T.R. Wright** used a satellite phone to communicate with the Fire Marshal.

44.     On or about September 17, 2014, **Shane Gordon** filed an insurance claim for the loss of the 1971 Cessna 500.  **Shane Gordon** communicated with the insurance company by email and cell phone.

45.     On or about January 26, 2015, **Shane Gordon** provided the insurance company with a notarized document wherein he made false and fraudulent representations.

46.     On or about February 4, 2015, **T.R. Wright** and his co-conspirators caused the insurance company to issue a check in the amount of $440,000.00 made payable to Plaisir en Vol, Inc., through its law firm, Coats and Evans, P.C.

47.     On or about February 11, 2015, the check was deposited in a Coats and Evans, P.C. IOLTA account at Woodforest National Bank.  The check was endorsed by **Shane Gordon** as director of Plaisir en Vol, Inc.

48.     On or about February 4, 2015, a wire transfer of $50,000.00 was made to a title company from a JP Morgan Chase account held in the name of "Theodore R. Wright or A.R.P. or Shane W. Gordon, POA" for the purchase of a Gates Learjet, Model 35A, Serial Number 476.

49.     On or about February 23, 2015, Coats and Evans, P.C., transferred $436,611.50 by wire transfer to the same title company for the purchase of the Learjet.

50.     On or about February 27, 2015, according to Federal Aviation Administration (FAA) records, the Learjet was purchased by Theodore R. Wright Enterprises, Inc.

**1998 Hunter Passage**

51.     On or about October 6, 2014, Theodore R. Wright Enterprises, Inc. purchased a 1998 Hunter Passage for $50,150.00.  The vessel was paid for by two wire transfers from a JP Morgan Chase account held in the name of "Theodore R. Wright or A.R.P. or Shane W. Gordon, POA."

52.     On or about November 5, 2014, the Hartmann Sanford Group, Inc. "loaned" **Edward Delima** $193,500.00 for the purchase of the vessel.

53.     On or about November 6, 2014, **Edward Delima** insured the vessel for $195,000.00 at which time he made false and fraudulent representations to the insurance

company.   The insurance premium payments were made from a Capital One credit card account held in the name of **T.R. Wright**.

54.     On or about November 7, 2014, Theodore R. Wright Enterprises, Inc. "sold" the vessel to **Edward Delima**.   The bill of sale shows that **Shane Gordon** signed as seller on behalf of Theodore R. Wright Enterprises, Inc.

55.     On or about February 20, 2015, the vessel was extensively damaged due to partially sinking in a marina in Ko Olina, Hawaii.

56.     On or about February 27, 2015, **T.R. Wright** and **Edward Delima** communicated through Facebook.   Excerpts of their communications are as follows:

| | |
|---|---|
| **T.R. Wright**: | when will you be avail for a 15 min call |
| **Edward Delima**: | how are we gonna handle this |
| | I don't want to [expletive] this up its a lot of money |
| **T.R. Wright**: | I think you and I should be on the phone together for the claim call, I pretend to be you and give them all the info, then you will hear everything so you know what to say later, and we will be on messenger if we need to communicate while we are on the phone with them.  thoughts? |
| | might need to be tomorrow before I can though |
| **Edward Delima**: | Sounds good |

|  | I wanna make sure we are on the same page |
|  | with all of this |
|  | Probably make a fact page of notes |
| **T.R. Wright**: | good thinking |
|  | so we do tomorrow after your work? |
| **Edward Delima** : | Easier than digging through chats |
|  | Sounds good |

57.    On or about February 27, 2015, **T.R. Wright** and **Edward Delima** filed an insurance claim for the loss of the vessel in which they made false and fraudulent representations.  Among other things, **T.R. Wright** and **Edward Delima** falsely and fraudulently represented certain facts related to the vessel, including the ownership of the vessel, the condition of the vessel, and the reason for the sinking of the vessel.  On this date as well as on other dates, **T.R. Wright** used, directed, and/or assumed the identity of **Edward Delima** in communications with the insurance company.   On such occasions, **T.R. Wright** and **Edward Delima** communicated with the insurance company by email and cell phone.

58.    On or about November 11, 2015, **Shane Gordon** communicated with the insurance company by phone wherein he made false and fraudulent representations.

59.    On or about July 3, 2015, **T.R. Wright**, **Shane Gordon**, **Edward Delima**, and their co-conspirators caused the insurance company to issue a check in the amount of $180,023.80 made payable to the Hartmann Sanford Group, Inc.

60.     On or about July 6, 2015, the check was deposited into a U.S. Bank account held in the name of **T.R. Wright** d/b/a Hartmann Sanford Group.

61.     On or about July 10, 2015, **T.R. Wright** transferred $180,000.00 by wire transfer from the U.S. Bank account to a JP Morgan Chase account held in the name of "Theodore R. Wright or A.R.P. or Shane W. Gordon, POA."

All in violation of 18 U.S.C. § 1349.

### COUNTS 2-4

Violation:  18 U.S.C. § 1343
(Wire Fraud)

1.     The General Allegations section of this indictment and paragraphs 1-61 of Count 1 of this indictment are realleged and incorporated by reference as though fully set forth herein, as constituting and describing the defendants' scheme and artifice to defraud insurance companies and unlawfully obtain money from such insurance companies by means of false and fraudulent pretenses, representations, and promises.

### Acts in Execution of the Scheme and Artifice

2.     On or about the dates specified as to each count below, in the Eastern District of Texas and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud insurance companies and unlawfully obtain money from insurance companies by means of false and fraudulent pretenses, representations, and promises, the defendants, **T.R. Wright**, **Shane Gordon**, and **Raymond Fosdick**, acting in concert with and aided and abetted by each other and others known and unknown to the grand jury, knowingly transmitted and caused to be

transmitted by means of wire communication in interstate and foreign commerce the

writings, signs, signals, pictures, and sounds described below:

| Count | Date | Description of Wire |
|-------|------|---------------------|
| 2 | 8/30/2014 | iMessages between **T.R. Wright** and **Raymond Fosdick** |
| 3 | 9/16/2014 | Email from **Shane Gordon** to the Athens Fire Marshal |
| 4 | 9/17/2014 | Phone call from **T.R. Wright** to the Athens Fire Marshal |

All in violation of 18 U.S.C. § 1343.

## COUNT 5

Violation: 18 U.S.C. § 844(n)
(Conspiracy to Violate 18 U.S.C.
§ 844(i))

1.      The General Allegations section of this indictment and paragraphs 1-8 and

30-50 of Count 1 of this indictment are realleged and incorporated by reference as though

fully set forth herein.

2.      From on or about April 29, 2014, and continuing through on or about

September 13, 2014, the exact dates being unknown to the grand jury, in the Eastern

District of Texas, and elsewhere, the defendants, **T.R. Wright**, **Shane Gordon**, and

**Raymond Fosdick**, along with others both known and unknown to the grand jury, did

knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C.

§ 844(i), arson of property used in interstate and foreign commerce and used in an

activity affecting interstate and foreign commerce, that is to maliciously damage and

destroy by means of fire, a vehicle, that is a 1971 Cessna 500, United States Aircraft

Registration Number N18FM, used in interstate and foreign commerce and in an activity

affecting interstate and foreign commerce.

All in violation of 18 U.S.C. § 844(n).

## COUNT 6

Violation: 18 U.S.C. §§ 844(i)
and 2 (Arson of Property Used in
Interstate or Foreign Commerce
or Used in an Activity Affecting
Interstate or Foreign Commerce
and Aiding and Abetting)

1.      The General Allegations section of this indictment and paragraphs 1-8 and

30-50 of Count 1 of this indictment are realleged and incorporated by reference as though

fully set forth herein.

2.      On or about September 13, 2014, in the Eastern District of Texas, the

defendants, **T.R. Wright**, **Shane Gordon**, and **Raymond Fosdick**, did maliciously

damage and destroy, and aided, abetted, counseled, commanded, induced, and procured

the malicious damage and destruction of, by means of fire, a vehicle, that is a 1971

Cessna 500, United States Aircraft Registration Number N18FM, used in interstate and

foreign commerce and in an activity affecting interstate and foreign commerce

All in violation of 18 U.S.C. §§ 844(i) and 2.

## COUNT 7

Violation: 18 U.S.C. §§ 844(h)(1)
and 2 (Use of Fire to Commit a
Felony and Aiding and Abetting)

1.      The General Allegations section of this indictment and paragraphs 1-8 and

30-50 of Count 1 of this indictment are realleged and incorporated by reference as though

fully set forth herein.

2.      On or about September 13, 2014, in the Eastern District of Texas, the

defendants, **T.R. Wright**, **Shane Gordon**, and **Raymond Fosdick**, did knowingly use

fire, and aided, abetted, counseled, commanded, induced, and procured the knowing use

of fire, to commit 18 U.S.C. § 1343, wire fraud, a felony prosecutable in a court of the

United States.

All in violation of 18 U.S.C. §§ 844(a)(1) and 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

1.      The allegations contained in Counts 1 through 7 of this indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2.      Upon conviction of any violation of 18 U.S.C. §§ 1349, 1343, or 844 the defendants, **Theodore Robert Wright III**, **Shane Gordon**, **Raymond Fosdick**, and **Edward Delima**, shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

3.      The property which is subject to forfeiture, includes but is not limited to the following:

   a.  A money judgment in the amount of $938,554.80, which represents proceeds of the offense; and

   b.  Gates Learjet, Model 35A, Serial Number 476, currently bearing United States Aircraft Registration Number N1TW, and all associated logbooks, flight logs, and keys.

4.      Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred, or sold to, or deposited with a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the names of **Theodore Robert Wright III**, **Shane Gordon**, **Raymond Fosdick**, and **Edward Delima**.

5.      By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
5/17/17
Date

BRIT FEATHERSTON
ACTING UNITED STATES ATTORNEY

_____
NATHANIEL C. KUMMERFELD
ASSISTANT UNITED STATES ATTORNEY

Indictment – Page 22

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 6:17CR *40* |
| | § | JUDGE *RC/KNM* |
| THEODORE ROBERT WRIGHT III (01) | § | |
| SHANE GORDON (02) | § | |
| RAYMOND FOSDICK (03) | § | |
| EDWARD DELIMA (04) | § | |

## NOTICE OF PENALTY

### COUNT 1

VIOLATION:        18 U.S.C. § 1349
                  Conspiracy to Commit Wire Fraud

PENALTY:          Imprisonment of not more than twenty (20) years; the greater
                  of a fine not to exceed $2500,000, a fine not to exceed two
                  times the gross gain to the Defendant, or a fine not to exceed
                  two times the loss to the victim, or both such imprisonment
                  and fine; and a term of supervised release of not more than
                  three (3) years.

SPECIAL ASSESSMENT: $100.00

### COUNTS 2-4

VIOLATION:        18 U.S.C. § 1343
                  Wire Fraud

PENALTY:          Imprisonment of not more than twenty (20) years; the greater
                  of a fine not to exceed $250,000, a fine not to exceed two
                  times the gross gain to the Defendant, or a fine not to exceed
                  two times the loss to the victim, or both such imprisonment
                  and fine; and a term of supervised release of not more than
                  three (3) years.

SPECIAL ASSESSMENT: $100.00 each count

## COUNT 5

VIOLATION:                 18 U.S.C. § 844(n)
Conspiracy to Violate 18 U.S.C. § 844(i)

PENALTY:                 Imprisonment of not less than five (5) nor more than twenty (20) years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

## COUNT 6

VIOLATION:                 18 U.S.C. §§ 844(i) and 2
Arson of Property Used in Interstate Commerce or Used in an Activity Affecting Interstate Commerce and Aiding and Abetting

PENALTY:                 Imprisonment of not less than five (5) nor more than twenty (20) years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

## COUNT 7

VIOLATION:                 18 U.S.C. §§ 844(h)(1) and 2
Use of Fire to Commit a Felony and Aiding and Abetting

PENALTY:                 Imprisonment of ten (10) years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

This sentence shall run consecutively to any other sentence imposed.  A person convicted of a violation of this section shall not be placed on probation.

SPECIAL ASSESSMENT: $100.00